**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**SEATTLE DIVISION**

BENJAMIN JOSEPH LIGERI,     )
                    )
       Plaintiff,       )
                    )
v.                  )   Civil Action No. <u>2:25-cv-00860-JNW</u>
                    )
AMAZON.COM, INC.,       )
                    )   JURY TRIAL DEMANDED
       Defendant.     )
_____)

## COMPLAINT FOR DECLARATORY RELIEF, CONSTRUCTIVE TRUST, UNJUST ENRICHMENT, AND RECOGNITION OF EQUITY INTEREST ARISING FROM FOUNDATIONAL MARKETPLACE CONTRIBUTIONS

### INTRODUCTION

1. Plaintiff Benjamin Joseph Ligeri ("Plaintiff") brings this action to obtain restitution, declaratory relief, and recognition of a constructive ownership interest in Amazon.com, Inc. ("Amazon" or "Defendant"), quantified at approximately 125 to 175 basis points of Amazon's current market capitalization. This stake reflects Plaintiff's foundational and platform-defining contributions to Amazon's third-party Marketplace ecosystem, which were materially integrated into Amazon's infrastructure and monetization model without credit, compensation, or contractual equity – and then met with targeted retaliation, suppression, and expropriation designed to erase his legacy and absorb his commercial value.

2. The claim arises not from passive investment, but from a combination of value-creating innovation and unlawful appropriation. Plaintiff's foundational work was not only materially integrated into Amazon's Marketplace infrastructure but used to reshape entire categories—including toys and games, housewares, medical goods, private-label branding, and content-driven third-party sales. In the process, Amazon unlawfully appropriated Plaintiff's

goodwill, suppressed his trademarks, and used backend brand control tools to reroute sales away from Plaintiff's original listings and toward Amazon-controlled counterparts. The requested equity stake is not speculative—it is a measure of restitution tied to Amazon's systemic misappropriation of platforms, methods, and market access developed by Plaintiff over years of direct contribution.

3.   The scale of Amazon's misconduct is further evidenced by the estimated volume of individual trademark violations committed against Plaintiff's brands. Across multiple ASINs, categories, and enforcement cycles, Plaintiff estimates as many as 8,000 separate acts of infringement—including unauthorized use of his registered marks by third-party sellers at Amazon's behest, Amazon-internal brand overrides, GTIN hijackings, counterfeit substitutions, deliberate diversion of consumer goodwill, and the repurposing of original listings for Amazon's own benefit. Each such act may qualify as a distinct statutory violation under 15 U.S.C. § 1117, with potential damages of up to $250,000 per instance. While Plaintiff does not seek statutory damages in this action, the cumulative exposure from these violations—if pursued independently—could exceed several billion dollars, underscoring that the requested equity stake is not only proportionate, but arguably modest in light of the scale of systemic goodwill hijacking that occurred.

4.   Plaintiff alleges that Amazon's current Marketplace model is built in substantial part upon his pioneering work in, inter alia, toys and medical products, consumer relations, photorealistic product presentation, retail arbitrage, brand development, customer experience, product innovation, and optimized listing design. Amazon integrated these innovations into its core operations—then systematically dismantled Plaintiff's businesses, erased his listings, and displaced his brands without credit or compensation.

5.   Plaintiff seeks restitution, declaratory relief, and a constructive equity stake of no less than 1.25% and no more than 1.75% of Amazon's outstanding shares, pursuant to doctrines of unjust enrichment, promissory estoppel, constructive trust, equitable estoppel, quantum meruit, and breach of the implied covenant of good faith and fair dealing.

6.  This is not a case about failed competition—it is a *United States v. Paramount Pictures*—style case—on steroids—about calculated sabotage by a vertically integrated monopoly after the Plaintiff's value had already been absorbed and his brand goodwill stolen by Defendant.

## JURISDICTION AND VENUE

7.  This Court has subject matter jurisdiction under 28 U.S.C. § 1332 and 28 U.S.C. § 2201. The matter in controversy exceeds $75,000 exclusive of interest and costs. Venue is proper under 28 U.S.C. § 1391 because Amazon maintains its principal place of business in this district.

## PARTIES

8.  Plaintiff Benjamin Joseph Ligeri is a natural person residing in the State of Florida. At all relevant times, Plaintiff was the founder and/or a driving force behind the brands, listings, and product strategies operated on Amazon. Plaintiff currently holds personal ownership of the brands and GTIN codes at issue.

9.  Defendant Amazon.com, Inc. is a Delaware corporation headquartered in Seattle, Washington. Amazon operates the world's largest e-commerce platform and maintains illicit hegemonic control over its third-party Marketplace.

## FACTUAL BACKGROUND

### I. PLAINTIFF'S PIONEERING ROLE IN AMAZON'S MARKETPLACE MODEL

10. Plaintiff played a pivotal role in transforming Amazon from a disjointed online shop—primarily known for books and bargain-bin knickknacks—into the vertically integrated, private-label, brand-driven, and arbitrage-enabled global retail empire it is today. He was written up in top business magazines as the top growing Amazon business back in 2012. He pioneered retail arbitrage on the platform, effectively inventing the category and accidentally launching what would become an entire industry. He had a lot of similar "accidents" as well. Plaintiff developed and launched over a dozen distinct brands, bringing structure and visibility to underserved markets, including bulk and craft seashell assortments.

He collaborated with Kangaroo to create best-selling toys and pool floats, later featured in social posts by celebrities such as Britney Spears, Miley Cyrus and Dwayne "The Rock" Johnson, absent any endorsement agreement—demonstrating the product's organic market penetration and cultural ubiquity. Plaintiff helped forge Amazon's dominance in seasonal retail, making it a destination for top-selling Halloween and Christmas items, and achieved over $1 million in sales on a single day. His innovations—too numerous to catalog—include the development of a beloved consumer medical brand, trusted above Fortune 100 competitors by customers who still search for it by name today. To establish credibility and drive adoption, Plaintiff sold millions of dollars' worth of inventory under cost across numerous product categories—fueling reviews, momentum, and consumer confidence that benefited not only his own brands (which Amazon would later bootleg in China) but the Marketplace at large.

Through early innovation in product presentation, brand storytelling, technical-level photographic communication, and buyer-facing professionalism, Plaintiff helped recast Amazon as a platform where customers could confidently purchase even regulated medical products. His listings introduced visual clarity, brand trust, and conversion-optimized design that fundamentally reshaped buyer behavior. Plaintiff didn't just build the consumer medical product environment on Amazon—he made it credible, trusted, and profitable. Once that influence threatened Amazon's need for anonymity and control—where innovations are absorbed not credited—he was methodically blackballed by both Amazon and legacy suppliers like Medline, who found it easier to appropriate Plaintiff's methods than to compete with them by merit.

Today, Amazon is widely recognized as a retail monopoly and is currently being sued by the United States government for a narrow sliver of its misconduct — litigation that, while important, captures only a fraction of the abuse perpetrated by Amazon. Its success is in no small part due to contributions pioneered by Plaintiff—contributions Amazon systematically co-opted without recognition or compensation, and often through deliberate destruction, bootlegging, and the dismantling of the very businesses Plaintiff built during his effective servitude on the platform, often working 100-hour weeks to perfect product offerings Amazon would later steal.

11. Many of Plaintiff's original ideas, listing structures, copyrights, trademarks, and even physical products were systematically misappropriated by Defendant and incorporated into Amazon's ecosystem—without credit, compensation, or license. In multiple instances, Amazon directly bootlegged Plaintiff's best-selling, trademarked merchandise and placed counterfeit versions for sale on Plaintiff's own listing pages. Amazon admitted to this conduct in the past but basically said "what are you going to do about it, we can outspend you in court". Plaintiff originated the structured brand listings, medical product frameworks, and visual sales formats that later became standardized across Amazon—but not through partnership or license. Rather than collaborate, Amazon silently absorbed these contributions, lifted Plaintiff's presentation style and techniques, and rebranded them as native platform innovations. Amazon's seller ecosystem today is built on stolen methodologies first pioneered by Plaintiff and others like him, who were later cast aside—or else absorbed and replaced through Amazon's internal rulemaking: systems designed not to support sellers, but to unlawfully absorb and eliminate them.

## II. AMAZON'S SYSTEMATIC DESTRUCTION OF PLAINTIFF'S BRANDS

12. After absorbing Plaintiff's techniques, Amazon retaliated against his business through a series of unjust enforcement actions including massive cash seizures, inventory seizures, inventory destruction, blacklisting, brand hijackings, and corporate espionage—disguised as verification processes—used to download and absorb his sourcing data.

13. Plaintiff's "PrimeMed" medical brand was delisted and devalued and torn apart through a mixture of third-party bootlegging that Amazon intentionally did not enforce, fraudulent Amazon-issued warnings, GTIN authenticity schemes that Amazon plays on sellers, and targeted intellectual property sabotage. An Amazon representative in Seattle once described one of the processes to Plaintiff, then CEO of Medical Collaborative, as "Tombstoning"—a term used when a listing is annihilated under the pretense of hyper technical ("erroneous") enforcement. But the attack went far beyond enforcement. **Today, many trademark attorneys describe Amazon as the true trademark authority in e-commerce, with the USPTO reduced to a figurehead agency—recognized in theory, ignored in practice**. Amazon determines what a trademark is, who may use it, and routinely fabricates brands

from scratch without any federal registration or legal basis.

14. The **Kangaroo** brand was, for a time, the largest and most visible private-label toy, novelty, Halloween and Christmas brand on Amazon. Its success, however, became its death sentence. Rather than reward or partner with Kangaroo, Amazon began bootlegging its top-selling items—cloning its products, undercutting its listings, and ultimately locking the brand out of its own catalog. The rightful brand owner was denied access to sell its own ASINs, subjected to various forms of pseudo-regulatory schemes including Account Health witch trials where Plaintiff's brand representative was forced to falsely admit that the newly manufactured merchandise was somehow "used" in order to beg for reinstatement to sell along Amazon the counterfeiter. Amazon used its platform control to lock Plaintiff out of his own listing while it continued to sell bootleg versions of it. This was an engineered coup against the rightful brand owner, executed under color of enforcement.

15. The aggregate value of Plaintiff's actual destroyed inventory and seized assets exceeds $500,000. The aggregate of lost sales lies in the hundreds of millions, a figure to be proven at trial. All of these losses were the result of Amazon's unlawful conduct.

## III. SPECIFIC INSTANCES OF BRAND DESTRUCTION AND MISAPPROPRIATION

16. ***Exhibit A: GTIN Hijacking of 'Point'*** – Amazon falsely overrode Plaintiff's GS1-registered "Point" brand, replacing it with a fabricated brand called "AYOJOY," in direct violation of the GTIN's registered ownership (as seen on the universally trusted GS1 database) and Amazon's own backend brand data. This example illustrates deliberate and willful brand sabotage—which is now a staple of Amazon's broader enforcement and listing manipulation practices.

17. ***Exhibit B: Perfect Stix Bootlegging*** **(screenshot dated 2023-05-29 at 7.08.57 PM)** – Amazon deliberately stripped Plaintiff's legitimate brand, PrimeMed, from a top-ranked organic position on its website by introducing a new ad tier <u>above</u> Sponsored Products— which superseded natural and paid tiers—when customers searched for "PrimeMed medicine cups," and this "new ad tier" did not exist when customers searched for "medicine cups" without Plaintiff's brand name in the search. This, coupled with "tombstoning" was

not a correction—it was an erasure. Amazon then positioned itself as the seller of the replacement listing, siphoning customer goodwill and search relevance from the PrimeMed brand into its own fabricated label, "Perfect Stix." The hijacking was extremely precise: Amazon's listing was triggered only when users searched for the brand "PrimeMed"—not when they searched for the product itself—making clear that the goal was brand substitution, not product relevance.

18. **_Exhibit C: Green Sky Listing Seizure_** – Plaintiff filed a rights infringement complaint against unauthorized sellers offering counterfeit Green Sky–branded XX-Large hospital slipper socks under ASIN B09FYVSL8L. These sellers had no relationship with Plaintiff, his companies, or his authorized suppliers, and had never been granted permission to use the Green Sky trademark or sell the product. Prior to the Jassy regime, Amazon would routinely honor such complaints and swiftly remove infringers. However, under new leadership, Amazon sharply reversed course—a reversal that persists to this day.

Instead of removing violators, Amazon began arbitrarily declaring infringement reports "invalid or inaccurate" and responded with threatening notices implying that Plaintiff was himself violating Amazon policy merely for attempting to defend his trademark. The legitimate brand owner became the target. What followed was a complete inversion of Amazon's stated purpose: a company once focused on brand protection became a haven for bootleggers and a landmine for brand owners.

Amazon weaponized its internal policies not to stop abuse—but to intimidate those reporting it. After years of building Green Sky and securing federal trademark protection, Plaintiff found himself powerless: unable to approve trusted wholesalers, unable to stop known counterfeiters. Amazon had flipped the system entirely—punishing authenticity while subsidizing fraud. This new model of control allowed (and continues to allow) Amazon to systematically strip brand equity, degrade listings, and supplant rightful sales through intentional brand sabotage and copycatting.

19. **_Exhibit D: February 2025 Cease-and-Desist Letter and IP Escalation_** – On February 26, 2025, Plaintiff sent a formal cease-and-desist letter and supporting documentation to Amazon Legal. The communication, sent at the direction of Amazon Seller Support—which was refusing to correct the

brand hijackings themselves—and sent after repeated failures of the normal Report Infringement Tools, included a detailed log of unauthorized brand hijackings involving Plaintiff's registered GTINs and longstanding Amazon listings. The fake brands overwriting Plaintiff's listings—including "AYOJOY," "Garifon," and "Gagaciso"—were not even real brands. They were not registered with the USPTO, were not backed by valid GS1 prefix ownership, and did not exist in any recognized intellectual property registry.

Under Amazon's own policies, brand changes are strictly prohibited unless authorized by GS1-backed ownership, registered trademarks, and a continuous listing history reflecting the original brand. A listing created under Plaintiff's brand could not lawfully be overwritten or repurposed under a fake brand name without breaching Amazon's own stated protections for catalog integrity, as well as basic trademark rights and laws, and basic consumer transparency. Yet despite Amazon's public commitments to GS1 data integrity, trademark protection, and brand change restrictions, Plaintiff's brands were erased, overwritten, and repurposed with fake brands in violation of every safeguard Amazon claims to enforce.

Plaintiff's cease-and-desist letter was completely ignored. No corrective action was taken. The internal records attached as Exhibit D show that Amazon was (and remains) not merely negligent—it was (and remains) orchestrating an internal system of brand laundering under the external guise of trademark enforcement.

20. These actions stated above reveal a pattern: Amazon identifies success, seizes control of it, and destroys the original creator behind it—while absorbing the traffic, revenue, and goodwill that creator built through years of arduous labor. In many cases, Amazon does not act alone but unleashes a swarm of bootleggers, shielding them from enforcement as they flood the listing, dilute the brand, and create the false appearance of chaos—only for Amazon to then swoop in as the new, self-declared brand authority.

## IV. LEGAL FRAMEWORK: SABOTAGE AND ILLEGAL EXTRACTION BY VERTICALLY INTEGRATED PLATFORMS

21. The Supreme Court has long held that vertical integration becomes unlawful when it enables a dominant platform to suppress or eliminate independent contributors after capturing their value. In *United States v. Paramount Pictures, Inc.*, 334 U.S. 131 (1948), the Court dismantled the Hollywood studio system for restraining independent creators through a

vertically integrated distribution scheme. Amazon's conduct fits this mold: it used its internal tools—brand registries, listing controls, and account flags—not merely to extract value from Plaintiff, but to displace, overwrite, and erase him from the marketplace after absorbing his methods, trademarks, goodwill, and customer base.

22. Similarly, in *Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019), the Court allowed a suit where Apple's platform power allegedly let it impose inflated pricing and control over downstream innovation. Here, Amazon's actions go further: Plaintiff does not merely allege pricing harm, but an illegal extraction-and-displacement scheme whereby Amazon hijacked or suppressed Plaintiff's GTIN-backed brands and listings (e.g., Point), reassigning them to fabricated or Amazon-controlled entities, such as "AYOJOY."

23. These acts constitute digital fraud—not competition. After Plaintiff built valuable retail pathways and consumer goodwill under brands such as PrimeMed, Point, and Green Sky, Amazon intervened to mislabel, delist, and redirect those brand assets toward counterfeit or sham entities. This conduct is not competitive behavior. It is a systematic exploitation of creator success as a predicate for fraud, sabotage, and displacement.

24. Amazon admitted that it sold unauthorized versions of Kangaroo-branded products, then brazenly told Kangaroo's agents they would get away with it due to their financial might. This conduct underscores Amazon's view that it is above enforcement, above fairness, above equity, and above the law. In equity, however, it is a foundational principle that when one party contributes proprietary methods, brand value, and market-defining innovation to a joint or dependent venture, and the other party knowingly absorbs and profits from those contributions without compensation, a constructive ownership interest may arise. Plaintiff was not a mere user of the Amazon platform—he was a foundational contributor whose work shaped core areas of Amazon's business strategy. Amazon's systematic absorption of Plaintiff's advancements on the Amazon marketplace, coupled with Plaintiff's exclusion and erasure by Amazon, gives rise to a claim not merely of tort—but of rightful ownership.

25. One of Plaintiff's most commercially significant but publicly silent contributions was to the toy and seasonal goods category under the Kangaroo brand. Plaintiff was a founding contributor to the creative development and product sourcing operation that gave rise to

Kangaroo Manufacturing, originally holding a 40% stake in the predecessor corporation, Yagoozon, Inc. While not the listed brand owner, together with his partner, Plaintiff served as the creative and strategic force behind many of Kangaroo's best-selling items— including pool floats, novelty toys, and holiday products that became viral hits across multiple seasons and were organically (without compensation) endorsed by celebrities such as **Britney Spears, Miley Cyrus, and Dwayne "The Rock" Johnson** (Exhibit E). These were not brand deals—they were unsolicited cultural moments. After helping elevate Kangaroo to category dominance, Plaintiff was ultimately cut out, and the brand was bootlegged by Amazon, which cloned its top products, suppressed its listings, and replaced them with Amazon-controlled variants.

26. In one striking example of Amazon's predatory conduct, Plaintiff operated a top-performing Amazon listing under the PrimeMed brand for specialty plastic medicine cups. Plaintiff heavily invested in this product line, designing original photography—critical for sales, given that medicine cups are notoriously difficult to photograph sharply—and crafting original, copyright-protected copywriting that introduced novel use cases, transforming what was once a disposable commodity into a versatile healthcare and workshop tool. Plaintiff's cups were injection molded, resulting in smooth, "epoxy-quality" walls ideal for precise mixing and multi-purpose applications. Amazon later cloned Plaintiff's product, using a cheaper thermoformed method that produced "anti-epoxy" bubble-textured walls lacking the same functionality. Despite these critical differences, Amazon copied Plaintiff's original copywriting and falsely claimed identical benefits. It then promoted its inferior imitation into a dominant top-of-page slot—above even *sponsored ad listings*—and targeted it directly to searches for "PrimeMed medicine cups," in a clear attempt to hijack Plaintiff's brand goodwill, mislead consumers, and displace Plaintiff's higher-quality, authentic listing with a counterfeit. **(See Exhibit B — Perfect Stix Bootlegging and PrimeMed Listing Hijacking).**

## V. AMAZON'S GLOBAL FULFILLMENT FEE FRAUD: SYSTEMIC MISMEASUREMENT, SUPPRESSED DISPUTES, AND UNLAWFUL ENRICHMENT

27. Amazon engages in systemic measurement fraud within its Fulfillment by Amazon ("FBA") program, deliberately misrepresenting the dimensions and weights of third-party products in order to inflate fulfillment fees, misclassify inventory into higher-cost tiers, and unlawfully extract additional revenue. This scheme constitutes one of the most profitable and structurally embedded forms of fraud Amazon commits. While Amazon's standard contractual entitlement includes a 15% referral fee based on gross sales proceeds, it also charges a separate FBA fee, which it manipulates in a myriad of deceptive ways. By artificially inflating dimensional data, Amazon unlawfully captures dramatically higher margins—transforming what should be a fixed, predictable logistics cost into a rigged toll booth. FBA fees are calculated almost entirely based on recorded size and weight, independent of the product's sale price. When Amazon falsifies those dimensions, it directly and fraudulently increases its per-unit revenue at the seller's expense—quietly turning standard, agreed-upon fulfillment costs into a high-yield margin extraction engine.

28. Amazon's manipulation of fulfillment data often results not in minor errors, but in overcharges two to three times the correct fulfillment cost per unit—a staggering and illicit inflation when multiplied across tens of millions of unit sales. Sellers who spend years perfecting lightweight, compact designs can see their margins obliterated overnight by phantom measurements. Even when products are engineered specifically to fit precise fee categories, Amazon routinely records fictitious dimensions—often inflating a product's height or other measurements multiple times over.

Although sellers are theoretically allowed to request remeasurement, these requests are capped at 20 per month, and Amazon frequently consumes these requests by conducting bad-faith remeasurements that replicate the original fraud or worsen the outcome. This practice effectively trains sellers to stop contesting false measurements altogether.

It is common, for instance, for a 2x2x2-inch product to be falsely logged as 2x2x8, with no meaningful recourse.

Meanwhile, Amazon perpetually destabilizes the FBA tier system by creating and cancelling pricing programs like "Small and Light," or by changing tier criteria arbitrarily mid-cycle—forcing sellers to scramble to repackage inventory or change their price to requalify, often only to find themselves excluded anyway due to contrived mismeasurements. A single policy change might erase a small margin; another might quietly impose fees that exceed the sale price itself and suddenly a seller finds he has been paying Amazon for every sale he gains. In many cases, Amazon does not even publicly announce new fees—it simply reassigns fulfillment charges to higher tiers based on bogus remeasurements, causing sellers to lose money on every sale, despite no changes in product dimensions, weight, or packaging.

Amazon's tactics are surgically designed to confuse and demoralize. When faulty measurements do not impact Amazon's bottom line, it will occasionally err in the seller's favor—for example, Plaintiff has had items weighing approximately 4 ounces misrecorded as weighing one-tenth of an ounce. Although the fee charged remains the same in such cases, these selectively absurd errors serve a psychological purpose: to instill the impression that Amazon's systems are simply chaotic rather than systematically exploitative. Sellers are led to believe, falsely, that Amazon is merely "too hectic and overwrought" to measure products accurately, conditioning them to accept fee abuse without resistance for fear of a worse outcome. Plaintiff has seen Amazon come back with weights over one hundred pounds for an item weighing in fact less than one pound.

29. Despite possessing advanced scanning systems such as Cubiscan, capable of measuring with sub-inch precision, Amazon routinely disregards or overrides this data without explanation—routinely recording measurements as much as five times greater than reality.

When challenged, Amazon invokes opaque "internal team" determinations, often declaring the issue permanently closed, even in the face of photographic proof and technical dimensional documentation. Sellers are stonewalled, misdirected, and ultimately forced to absorb inflated fees based on fabricated data they cannot contest. This mismeasurement fraud is not a glitch—it is a core component of Amazon's margin extraction strategy: weaponizing logistics against the very businesses it claims to empower.

The cumulative impact is staggering across approximately $2 trillion in lifetime FBA-related third-party sales (excluding Amazon's own inventory), even a modest 10% inflation of seller charges—spanning FBA fees, storage, removal, and referral miscalculations—would represent over $200 billion in unlawful gains.

Plaintiff personally experienced these abuses over hundreds of SKUs spanning more than a decade, with estimated personal losses exceeding $10 million due solely to Amazon's dimensional misrepresentations and the cascading fee manipulations they triggered. This is not innovation. It is institutionalized theft, scaled globally and buried beneath layers of shifting policy, technical fog, and strategic confusion.

30. The systemic fraud described above is not theoretical. It can be seen in a single, seemingly innocuous cowboy hat—a case study that encapsulates the mechanics, scale, and consequences of Amazon's mismeasurement scheme.

Plaintiff sold lightweight felt cowboy hats under multiple SKUs, identical in structure, packaging, and material, differing only by color. These SKUs were initially profitable, retailing at $11.99 with fulfillment fees averaging $3.00 per unit.

Without warning, Amazon reclassified the item into a higher fee tier, inflating the FBA charge to over $9.00 per unit—instantly converting all sales into financial losses. This spike was driven partly by changes to Amazon's size-tier structure, but more egregiously by fabricated dimensional data that bore no resemblance to the actual item.
Despite internal measurements, certified scale verifications, and triple-checked packaging by Plaintiff's staff, Amazon recorded wildly inconsistent sizes across SKUs—sometimes assigning a height of over nine inches to a product that stood less than six. The discrepancies were not subtle; they were systemic, and they crossed into a whole new category of "oversized" items, creating a massive spike in FBA fees pursuant to Amazon's category fee structure.

Amazon's own support team, in CASE ID 12094905301, acknowledged that new dimensions had been recorded but refused to allow further remeasurement or correct the fee tiering. This issue escalated into a full-company crisis for Plaintiff, consuming the time and

labor of the CTO, Operations Manager, Shipping Manager, and executive staff over weeks of effort to restore correct billing.

Despite clear evidence and internal consensus, Amazon would not relent. They continued to bounce measurements and fees around at random, lowering some and raising others at the same time. This case study exemplifies Amazon's refusal to honor physical reality, the futility of its internal support structure, and the devastating financial harm created when fabricated mismeasurements are paired with arbitrary policy shifts. (**See Exhibit F – Cowboy Hat SKU Case Study.)**

31. When Plaintiff attempted to remove the impacted cowboy hat inventory from Amazon's warehouses in order to discontinue them as the new higher price was creating a 50% return rate, an additional layer of systemic abuse became clear: Amazon's removal fees, historically a flat and predictable charge of approximately $0.25 per unit, had become randomly and massively inflated and impenetrably confusing.

In many cases, Amazon demanded removal or destruction fees as high as $4.00 per unit—exceeding 30% of the product's original retail price. This artificially high cost effectively forced sellers into continued sell-through, allowing Amazon to profit twice: first by overcharging inflated FBA fees on sales, and second by retaining additional revenues associated with returned merchandise.

Even when destruction was requested, the fees bore no relation to actual disposal costs, often reaching 200 times the rate of commercial waste services. This opaque and exploitative fee structure made it financially impossible for Plaintiff to recover or responsibly dispose of the affected inventory. Rather than allow sellers a reasonable off-ramp, Amazon weaponized removal fees to trap sellers into abandonment, forced liquidation, or continued participation under financially suicidal terms.

## EXHIBITS INDEX

**Exhibit A** – GTIN Hijacking of "Point" Brand (AYOJOY override screenshot)

**Exhibit B** – Perfect Stix Bootlegging Screenshot (2023-05-29 at 7:08.57 PM)

**Exhibit C** – Amazon Email Response to Green Sky Trademark Enforcement (Complaint ID: 16330068751)

**Exhibit D** – February 2025 Cease-and-Desist Letter and Escalation Email Thread

**Exhibit E** – Organic Celebrity Endorsements of Kangaroo Products

**Exhibit F** – Cowboy Hat SKU Case Study: Systemic Fee Inflation via Mismeasurement**

    **F1:** Summary Table

    **F2:** Screenshot of SKU T5137 (Gray Hat)

    **F3:** Brown Hat Verified Weight (Photo)

    **F4:** Tan Hat Verified Weight (Photo)

    **F5:** Seller Central Screenshot Showing Fee Spread

    **F6:** Amazon Internal Response (Case ID 12094905301)

    **F7:** Comparison Table – Cubiscan vs. Verified Measurements

## V. RELIEF REQUESTED

32. Plaintiff seeks:

    a. Declaratory judgment recognizing Plaintiff's foundational contributions to Amazon's Marketplace model.

    b. Imposition of a constructive trust awarding Plaintiff a 1.25–1.75% equity interest in Amazon.com, Inc., corresponding to approximately $30.175 to $42.245 billion based on Amazon's publicly reported market capitalization of $2.414 trillion as of April 25, 2025.

c. Restitution and disgorgement of all unlawful profits Amazon derived through the misappropriation of, among other things aforementioned in the Complaint, Plaintiff's intellectual property, listing frameworks, product formats, and marketplace infrastructure — including but not limited to fraudulent fee extractions detailed herein.

33. Plaintiff's contributions and sacrifices built core components of Amazon's platform, beginning with the toy and seasonal goods category — where Plaintiff's innovations in retail arbitrage, private label development, viral product design, and inventory scaling helped transform Amazon from a commodity seller into a dominant marketplace for holiday, novelty, and consumer goods.

Plaintiff's work reshaped not only Amazon's catalog strategy, but also its internal seller support systems, fee structures, and seasonal promotional models. His intensive scrutiny of Amazon's fee practices and operational methods forced Amazon to harden and institutionalize its fraudulent mechanisms, entrenching abuses that had previously been more ad hoc.

Years later, Plaintiff again played a pivotal role in legitimizing Amazon as a trusted source for regulated and quasi-medical products, setting new standards for visual presentation, buyer confidence, and direct-to-consumer healthcare sales. These were not incidental contributions; they were platform-defining innovations, developed independently and absorbed wholesale by Amazon without contract, compensation, or credit. Plaintiff was not an employee, vendor, or licensee—he was a foundational force whose work Amazon built around, then expropriated.

His equity interest does not arise from mere effort, but from the systemic reliance and strategic integration Amazon undertook, followed by deliberate exclusion. What began as unchecked enrichment ended in targeted erasure. After bootlegging Plaintiff's brands, locking him out of his own listings, and deploying internal systems to erase his presence on the platform, Amazon ultimately seized Plaintiff's final $70,000 — along with 56 units of glow-in-the-dark stars — the petty remnants of an empire they had already surgically dismantled.

This was not ordinary corporate aggression. It was a calculated extraction and elimination, executed with the soulless precision of a robber removing the last pennies from a fallen victim's pocket. The scope and scale of Amazon's conduct — from absorption to obliteration — warrants recognition not merely as a contributor, but as a near founder whose equity interest must be restored.

Even in the vast architecture of corporate fraud, there are few acts as coldly calculated as this.

Respectfully submitted,

_____

Benjamin Joseph Ligeri
3120 Corey Rd
Malabar, FL 32950
benligeri@gmail.com
321-831-2595

Date: _May 6th, 2025_

**EXHIBIT A**



Health & Household › Health Care › Ear Care › Earplugs

Roll over image to zoom in

# Point Cotton Nosebleed Plugs - Extra Absorbent Blood Clotting Cotton Rolls for The Nose (50 Count)

Brand: AYOJOY

4.5 ★★★★★ ∨ 240  |  Search this page

Amazon's Choice

200+ bought in past month

$6⁵⁹ ($0.13 / Count)

FREE Returns ∨

Get $60 off instantly: Pay $0.00 upon approval for Amazon Visa.

| | |
|---|---|
| **Brand** | AYOJOY |
| **Color** | White |
| **Material** | Cotton |
| **Recommended Uses For Product** | Nosebleed Management |
| **Size** | 1 Count (Pack of 50) |

## About this item

- Exceptional Absorbency: Point Cotton Nosebleed Plugs are designed to provide superior absorbency for effective nosebleed management. The high-quality cotton material quickly soaks up blood, ensuring a clean and comfortable experience during nosebleeds. The extra absorbent properties allow for optimal blood clotting, helping to put an end to nosebleeds faster and more efficiently. These nosebleed plugs are an essential addition to any first aid kit or medicine cabinet.

- Convenient Blood Clotting Solution: Our cotton rolls are specifically crafted to promote blood clotting in the nose during nosebleeds. The soft and gentle cotton material encourages clot formation by providing a comfortable barrier in the nostril, ultimately leading to faster relief. Keep Point Cotton Nosebleed Plugs on hand for a quick and effective solution to unexpected nosebleeds, ensuring that you are always prepared in times of need.

nade from
genic materials?

When multiple sellers sell the same product through a single detail page, we combine and present the best product data to ensure customers get the best experience.

Show content currently live on the detail page

**Product Details**　　Images　　Variations　　Offer　　Safety & Compliance



AYOJOY Cotton Nosebleed Plugs - Extra Absorbent Blood Clotting Cotton Rolls (50 Count)

**ASIN:  B09SNS9SWN**
**GTIN:  00083917000059**
**Amazon Sales Rank:  41350**

**Competing Marketplace Offers:**
2 New  from $5.99+ $0.00 shipping
View Listings on Amazon

More Info ›

AYOJOY Cotton Nosebleed Plugs - Extra Absorbent Blood Clotting Cotton Rolls (50 Count)

Customizations ⚠ ⑦　　**Does this product have customizations?**
　　○ Yes
　　⦿ No

**Item Name** ⑦
AYOJOY Cotton Nosebleed Plugs - Extra Absorbent Blood Clotting Cotton Rolls (50 Count)

Example: Adidas Blue Sneakers

**Brand Name** ⑦
AYOJOY

Example: Sony

\* **External Product ID** ⑦
00083917000059　　B09SNS9SWN　　gtin

　　　　　　　　　　　　　　　ASIN ‹

**Item Type Keyword** ⑦
earplugs

Suggest a change

**Model Number** ⑦
LK0164-50

Example: RXZER23

**Model Name** ⑦
LK0164-50

Edit 🔒

# 50 Pack of Point Nosebleed Plugs / Earplugs

**IN USE**    GTIN: 00083917000059

[ Edit Product ]    [ Clone Product ]    [ Product History ]



0 83917 00005 9

### Your UPC-A Barcode
**How will this barcode be used?**

Retail Point-of-Sale

This barcode size is ideal for most retail point-of-sale packaging

[ Download EPS ]    [ Download PNG ]

For other barcode types as well as barcode resizing, verification, and printing:

**Find a GS1 US Certified Solution Partner ›**

## Product Details

Product Description (EN)
**50 Pack of Point Nosebleed Plugs / Earplugs**

Brand (EN)
**Point**

Industry
**General**

GTIN-14
**00083917000059**

SKU
**P-LK0164-50CT**

Company Prefix
**0083917**

GTIN-12 (UPC)
**083917000059**

## Packaging Information

Package Level
**Each**

Purchasable by Consumer?
**Yes**

Variable Measure?    For Shipping Only?

✕

# EXHIBIT B



 **EXHIBIT C**

Benjamin Joseph <benligeri@gmail.com>

---

## Your Report of Rights Infringement on Amazon.com
1 message

---

**Amazon** <no-reply-notice-outreach@amazon.com>                    Tue, Oct 1, 2024 at 10:33 PM
To: benligeri@gmail.com



Hello,

Thank you for your report of infringement. We reviewed your notices of infringement and determined that the notices you have submitted to Amazon are invalid or inaccurate. Reporting false, misleading, or consistently inaccurate notices of infringement violates our policies.

Complaint ID: 16330068751

Sincerely,
Amazon Customer and Brand Protection

©2024 Amazon.com, Inc. or its affiliates. Amazon and all related marks are trademarks of Amazon.com, Inc. or its affiliates, Amazon.com, Inc. 410 Terry Avenue N., Seattle, WA 98109.



Benjamin Ligeri                                    Feb 26, 2025
3120 Corey Rd
Malabar, FL 32950                          **EXHIBIT D**
401-525-6340
benligeri@gmail.com

Amazon.com Legal Dept
P.O. Box 81226
Seattle, WA
98108-1226

All statements made under oath and under penalty of perjury.

Dear Amazon,

I have been trying to resolve matters of intellectual property hijacking of my brands for a very long time. My IP enforcement team's research shows that Amazon is the cause of the hijacked brands, not an actual seller or traditional hijacker. Amazon is sending notices to wholesalers who buy branded products from me that more or less state that my intellectual property has done something wrong and therefore has lost the ability to be a brand on Amazon (see enclosed document where **Amazon states that the brand "Cool Chimpanzee" is misusing another brand's intellectual property**). None of these accusations have any basis in reality. None of these brands have ever misused any other brand. To begin with, a brand is not a person, has no mens rea, and can't do anything wrong. I am also trying to sell my intellectual property and license my intellectual property to other Amazon sellers who can re-add it to brand registry to manage it, but those applications are being denied as well (see enclosed document entitled "**Brand Registry request for PrimeMed**"). If I sell a brand, it shouldn't carry any stigma (whether imagined or not) from my use of it as the new owner is now in control of it. Please also see letter (enclosed) sent to a myriad of Amazon emails as well as attorneys for Amazon on Feb 13th, 2025.

Recent brand changes that need to be corrected and we need to understand how this is happening:

B0B8185TY8 – "Cool Chimpanzee" brand Manual Card Shuffler changed to fake brand "Garifon"
B09FYVSL8L – "Green Sky" brand geriatric / yoga slip socks changed to fake brand "Gagaciso"
B09SNS9SWN – "Point" brand nosebleed plugs changed to presumably fake brand "Avojoy"

Sincerely,

Benjamin J Ligeri

Case 2:25-cv-00860-JHC   Document 1   Filed 05/06/25   Page 24 of 55

 Gmail

**Benjamin Joseph <benligeri@gmail.com>**

---

## re: URGENT MATTER OF INTELLECTUAL PROPERTY
8 messages

---

**Ben Ligeri** <benligeri@gmail.com>                                      Thu, Feb 13, 2025 at 10:57 AM
To: cs-reply@amazon.com, ANTITRUST <antitrust@ftc.gov>
Cc: Amazon <notice-dispute@amazon.com>, copyright@amazon.com, jeff@amazon.com, pq-product-review@amazon.com,
primary@amazon.com, "Magliery, John" <johnmagliery@dwt.com>, "Sgro, Adam" <adamsgro@dwt.com>, Paulus H Chan
<phc_ssg@yahoo.com>
Bcc: Dan Reale <headlinecopy@gmail.com>, Benjamin Joseph <benligeri@gmail.com>, Kyara Rebeero <kyara@gsp.llc>

Dear Amazon and Attorneys of Amazon,

Wholesalers of my brands on Amazon are complaining that the brand names are changing to hijacked fake brands and
they are in turn being blocked from selling product they purchased from me and my companies and being asked by
Amazon for authorization/ownership of said "fake brands" in some kind of Alice in Wonderland level stunt.

I have no access to the Amazon platform. I don't sell on Amazon, I don't have access to a brand registry account or any
other Amazon tools except the public:

https://www.amazon.com/report/infringement which is a service that no longer works.

I would like to resolve these <u>brand new</u> brand matters without having to file suit and injunction and I'm copying my
attorneys at DWT who are handling other litigation I have with Amazon to see if they can offer any suggestions as well as
Amazon department teams I've researched as possibly being the right avenue to correct these intellectual property ills.

Wholesalers are sending me cases they're filing with Amazon to show me the kinds of responses they're getting (see
attached). Amazon is accusing my brands of being "malicious" somehow as if a brand could be personified to have
deleterious human traits. A brand is but a name for a product that a consumer comes to know. Here's a couple examples
from a brand that has done millions on the Amazon marketplace known as "Cool Chimpanzee", a brand that I acquired
many years ago at the time of its launch on ecommerce sites such as Amazon.

These 300pk Cool Chimpanzee glow stars were created under the brand "Cool Chimpanzee", I remember I created the
listing myself back when I was an Amazon seller. The brand is using a valid GS1 UPC registered to "Cool Chimpanzee".
See attached "GS1 Statement.jpg" where GS1 claims Amazon can validate this with the GS1 database and Amazon has
made the same claims before but are now asking generic sellers for GS1 documents that only I have to further complicate
the matter. The entirety of documentation from Amazon that I've received from  unaffiliated third parties proves Amazon is
intentionally ripping these brands to retaliate against my lawsuits using tech muscle like Eric Smith. We would like to see if
Amazon (now that they've been caught) would like to stop doing so and restore these brands to their natural state and
thereby honor USPTO and federal laws.

If not, I will be commencing an action in my home state of Florida to address these new matters. I am not an Amazon
seller, but merely an IP holder as of now, and as DWT and Amazon, and all parties are 100% aware, I am not subject to
any BSA or arbitration or venue clauses

This was once super simple for Amazon to see that a listing was created under the brand "Cool Chimpanzee", and could
therefore not be changed to another brand. Now Amazon's system has added multiple layers of subterfuge to make a
once kindergarten-level maintenance and security process a now Space-X-level process.

Please see four screenshots of high selling products (and there are more)...

1) B0B1GFY6VB - Cool Chimpanzee Glow Stars changed to brand "JNAB"
2) B0B8185TY8 - Cool Chimpanzee Manual Card Shuffler changed to brand "Garifon"
3) B09FYVSL8L - Green Sky brand geriatric / yoga slip socks changed to brand "Gagaciso"
4) B09SNS9SWN - Point brand nosebleed plugs changed to brand "Avojoy"

What's strange is Amazon is so strict about brands. They *"don't"* let you change the brand of a product (and they shouldn't
of course) as it is hard wired to the product and its UPC and customer expectation. None of which can be changed
midstream. Amazon *"doesn't"* let you list under fake brands either as they require USPTO validation but these brands are
all fake.

I would like to inquire about getting my brands bundled into a brand registry account where I can control and protect said brands. Short of that, I would like Amazon to see to it that these brands are restored to their proper name and gated from such changes. I can provide a list of all brands I own to Amazon if there is a special lock box they can put them in to prevent changes. In the past, ALL brands were in this lockbox across the entire Amazon marketplace, now it seems to be a "special" lockbox only earned by those who are in Amazon's special inner circle.

As you can see my attachments like JNAB CASE.jpg, Amazon is pretending to be Ms. Swan from In Living Color, claiming it would be WRONG to CHANGE the brand from JNAB to Cool Chimpanzee when the system knows quite well the brand is and has always been Cool Chimpanzee and the only change being sought is to undo the hijacking. It's SOOOO EASY to verify. The page itself shows the product and UPC, the GS1 database validates it. The Amazon historical validates it. The sales validate it. The description. Everything validates this is a brand hijacking. You have to try very hard to ignore the basic realities to put yourself in this position to begin with.

Please advise.


Yours,


Benjamin Joseph Ligeri
Global Specialty Products, CEO
Linked In


**NOTICE OF THIRD-PARTY ACCESS TO BENLIGERI@GMAIL.COM**

This email is used by other people acting on my behalf such as assistants or campaign managers. If you'd like to verify if an email (or portion thereof) was written by me or a third party handling my workflow, kindly ask. We have a full transparency policy.

**EMAIL PRIVACY AND CONFIDENTIALITY AGREEMENT**

Email Contains Sensitive Intellectual Property or Other Sensitive Information and Is Not To Be Distributed without express written permission from BenLigeri@gmail.com. This e-mail message, including any attachments, is intended only for the use of the individual or entity to which it is addressed and may likely contain information that is privileged and/or confidential. You are hereby notified that any use, dissemination, distribution and/or reproduction of this message and/or any attachments by unintended recipients is unauthorized and unlawful. Electronic Communication Privacy Act, 18 U.S.C. § 2510 - 2521.

---

**7 attachments**



**GS1 Statement.jpg**
325K



**B0B8185TY8 - Screenshot 2024-12-27 at 9.04.10 AM.jpg**
686K

**JNAB CASE.jpg**
353K

**GS1 Statement.jpg**
325K

**JNAB CASE.jpg**
353K

**Cool Chimpanzee.jpg**
209K

**Green Sky Doghouse.jpg**
1165K

---

**Amazon.com** <nobody@bounces.amazon.com>                    Thu, Feb 13, 2025 at 10:58 AM
To: Ben Ligeri <benligeri@gmail.com>

Hello,

This email address is no longer in use. Please follow the instructions below to submit your appeal via Account Health in Amazon Seller Central.

If you are appealing an action taken on your account, please submit your appeal by clicking the "Reactivate your account"

button in Account Health
(https://sellercentral.amazon.com/performance/dashboard). If you want to submit additional information, click on the "View appeal" button and submit additional information as requested.

If you are appealing an action taken on your listings for an intellectual property complaint:
1. Navigate to "Received Intellectual Property Complaints" in the "Product Policy Compliance" section in Account Health
(https://sellercentral.amazon.com/performance/dashboard).
2. Locate the deactivation record for the product listings you want to appeal.
3. Click on the Appeal button next to the record to submit your appeal to reactivate your listings.

If you are appealing an action taken on your listings for an Amazon Listing Policy violation:
1. Navigate to "Listing Policy Violations" in the "Product Policy Compliance" section in Account Health
(https://sellercentral.amazon.com/performance/dashboard).
2. Locate the deactivation record for the product listings you want to appeal.
3. Click on the Appeal button next to the record to submit your appeal to reactivate your listings.

If you want to submit additional information:
1. Click on the "View appeal" button next to the deactivation record.
2. Click the "Submit additional information" button to submit the information necessary to reactivate your listings.

If you would like to submit a retraction for a previously submitted notice of infringement complaint, please follow the guidelines from the notice-acceptance acknowledgement you received.
Submit the retraction to notice-retraction@amazon.com.

Sincerely,


P.S. You received this message because Amazon.com received the following message:

Date: Thu, 13 Feb 2025 10:57:05 -0500
From: Ben Ligeri <benligeri@gmail.com>
To: cs-reply@amazon.com, ANTITRUST <antitrust@ftc.gov>
Subject: re: URGENT MATTER OF INTELLECTUAL PROPERTY

---

**Amazon.com** <nobody@bounces.amazon.com>      Thu, Feb 13, 2025 at 10:58 AM
To: Ben Ligeri <benligeri@gmail.com>

Hello from Amazon,

You've written to an address that does not accept incoming e-mails, but we have provided links to help answer some common questions.

Where's My Stuff/Order: http://www.amazon.com/help/wheres-my-stuff
Cancel Items or Orders: https://www.amazon.com/gp/help/customer/display.html/?ie=UTF8&nodeId=201976060
Problem with an Order: https://www.amazon.com/gp/help/customer/display.html/?nodeId=201945500
Marketplace Order Problems: https://www.amazon.com/gp/help/customer/display.html/?ie=UTF8&nodeId=201889250
Gift Certificates: https://www.amazon.com/gp/help/customer/display.html/?ie=UTF8&nodeId=201937160
Returns & Refunds: http://www.amazon.com/returns

You can modify an order that has not shipped or update your address at any time by visiting Your Account:
http://www.amazon.com/your-account.
You can find answers to other questions by searching http://www.amazon.com/help or reach out to us by clicking contact us at the bottom of any Help page.
Thank you for shopping at Amazon.com. We hope to see you again soon.

Sincerely,

Amazon.com Customer Service
http://www.amazon.com
[Quoted text hidden]

---

**Amazon.com** <nobody@bounces.amazon.com>            Thu, Feb 13, 2025 at 10:58 AM
To: Ben Ligeri <benligeri@gmail.com>

Dear Seller,

Thank you for submitting your appeal.  This email address does not accept incoming messages.

Please submit your appeal by following the instructions on the Account Health page in Seller Central
(https://sellercentral.amazon.com/performance/dashboard?ref=ah_em_nr). The Account Health
page shows how well your account is performing against the performance metrics and policies required to sell on
Amazon, and helps us direct your appeal to the team that can best assist you.

To appeal a listing deactivation, please click on the 'Next Steps' link next to the listing on your Account Health page.

To appeal an account deactivation, please follow the instructions in the banner on the top of your Account Health page.

You should expect a reply within 1-2 days after your appeal is submitted.

Thank you,
Amazon
[Quoted text hidden]

---

**Ben Ligeri** <benligeri@gmail.com>            Thu, Feb 13, 2025 at 1:55 PM
To: cs-reply@amazon.com, ANTITRUST <antitrust@ftc.gov>
Cc: Amazon <notice-dispute@amazon.com>, copyright@amazon.com, jeff@amazon.com, pq-product-review@amazon.com,
primary@amazon.com, "Magliery, John" <johnmagliery@dwt.com>, "Sgro, Adam" <adamsgro@dwt.com>, Paulus H Chan
<phc_ssg@yahoo.com>

Let me add some trademark certificates as well to this correspondence to show my identity as owner.
[Quoted text hidden]
--


--
[Quoted text hidden]

---

3 attachments

 **Cool Chimp Reg.pdf**
334K

 **Reg. No. 6626154 - Point.pdf**
60K

 **6927.006-06 20220503 REGISTRATION CERTIFICATE.pdf**
68K

---

**Amazon.com** <nobody@bounces.amazon.com>            Thu, Feb 13, 2025 at 1:56 PM
To: Ben Ligeri <benligeri@gmail.com>

Hello,

This email address is no longer in use. Please follow the instructions below to submit your appeal via Account Health in
Amazon Seller Central.

If you are appealing an action taken on your account, please submit your appeal by clicking the "Reactivate your account"
button in Account Health
(https://sellercentral.amazon.com/performance/dashboard). If you want to submit additional information, click on the "View
appeal" button and submit additional information as requested.

If you are appealing an action taken on your listings for an intellectual property complaint:
1. Navigate to "Received Intellectual Property Complaints" in the "Product Policy Compliance" section in Account Health
(https://sellercentral.amazon.com/performance/dashboard).

2. Locate the deactivation record for the product listings you want to appeal.
3. Click on the Appeal button next to the record to submit your appeal to reactivate your listings.

If you are appealing an action taken on your listings for an Amazon Listing Policy violation:
1. Navigate to "Listing Policy Violations" in the "Product Policy Compliance" section in Account Health (https://sellercentral.amazon.com/performance/dashboard).
2. Locate the deactivation record for the product listings you want to appeal.
3. Click on the Appeal button next to the record to submit your appeal to reactivate your listings.

If you want to submit additional information:
1. Click on the "View appeal" button next to the deactivation record.
2. Click the "Submit additional information" button to submit the information necessary to reactivate your listings.

If you would like to submit a retraction for a previously submitted notice of infringement complaint, please follow the guidelines from the notice-acceptance acknowledgement you received.
Submit the retraction to notice-retraction@amazon.com.

Sincerely,


P.S. You received this message because Amazon.com received the following message:

Date: Thu, 13 Feb 2025 13:55:19 -0500
From: Ben Ligeri <benligeri@gmail.com>
To: cs-reply@amazon.com, ANTITRUST <antitrust@ftc.gov>
Subject: Re: URGENT MATTER OF INTELLECTUAL PROPERTY

---

**Amazon.com** <nobody@bounces.amazon.com>      Thu, Feb 13, 2025 at 1:56 PM
To: Ben Ligeri <benligeri@gmail.com>

Hello from Amazon,

You've written to an address that does not accept incoming e-mails, but we have provided links to help answer some common questions.

Where's My Stuff/Order: http://www.amazon.com/help/wheres-my-stuff
Cancel Items or Orders: https://www.amazon.com/gp/help/customer/display.html/?ie=UTF8&nodeId=201976060
Problem with an Order: https://www.amazon.com/gp/help/customer/display.html/?nodeId=201945500
Marketplace Order Problems: https://www.amazon.com/gp/help/customer/display.html/?ie=UTF8&nodeId=201889250
Gift Certificates: https://www.amazon.com/gp/help/customer/display.html/?ie=UTF8&nodeId=201937160
Returns & Refunds: http://www.amazon.com/returns

You can modify an order that has not shipped or update your address at any time by visiting Your Account: http://www.amazon.com/your-account.
You can find answers to other questions by searching http://www.amazon.com/help or reach out to us by clicking contact us at the bottom of any Help page.
Thank you for shopping at Amazon.com. We hope to see you again soon.

Sincerely,

Amazon.com Customer Service
http://www.amazon.com


[Quoted text hidden]

---

**Amazon.com** <nobody@bounces.amazon.com>      Thu, Feb 13, 2025 at 1:56 PM
To: Ben Ligeri <benligeri@gmail.com>

Dear Seller,

**Amazon**

12:51 PM
12/31/2024

Hello from Amazon Selling Partner support,

My name is Andy and I am happy to assist you today.

I see that you are facing 5665 error while trying to create a listing.

During our review of your application, we have identified that the Brand Name you submitted **Cool Chimpanzee** is misusing another Brand's intellectual property rights. To maintain a safe and trustworthy shopping experience, this Brand name cannot be approved for use on Amazon. In view of the aforementioned, we had to decline your application.

Thank you for selling with Amazon,

Andy C.
Amazon.com Seller Support



**Ben Joseph Sbovia <billing@jasminesgifts.com>**

---

# Fwd: [CASE 16930497391] Fix a product page from hacking
1 message

---

**Jennifer Lexington** <universalindustrieswyoming@gmail.com>                    Tue, Dec 31, 2024 at 1:03 PM
To: Global Specialists <ceo@gsp.llc>

To Whom It May Concern at Global Specialty Products LLC

We don't know what to do about this. Amazon is changing your brands and saying they're abusive and we are working hard to change them back.

## Forwarded Conversation
**Subject: RE:[CASE 16930497391] Fix a product page from hacking**
------------------------

From: **Amazon Seller Support** <merch.service05@amazon.com>
Date: Sun, Dec 29, 2024 at 11:35 PM
To: <universalindustrieswyoming@gmail.com>

Hello from Amazon Brand Registry Support,

We see that your query is regarding all of the brands have been changing and you thought Amazon required brands to stay the same and follow GS1 guidelines, the ASIN B0B1GFY6VB has Cool Chimpanzee brand since its origin and now it just changed to JNAB and the ASIN B0B8185TY8 has been changed Cool Chimpanzee to Garifon.

If you choose to rebrand a product you must create a new ASIN rather than update an existing ASIN.

This is true even if the product does not change materially after the brand update.

Rebranding and packaging differences on products can cause customer order returns and can potentially hurt your metrics. To prevent this unwanted outcome, we don't allow the brand name to be changed for an ASIN.

For more information, go to "Amazon Brand Name Policy":

https://sellercentral.amazon.com/help/hub/reference/G2N3GKE5SGSHWYRZ

If the intended brand is not part of Amazon Brand Registry, we recommend that you complete registration via "Enroll a new brand" link on the Brand Registry landing page:

https://brandregistry.amazon.com/

To help us continually improve, we ask that you take a moment to complete our survey below to tell us about your experience with this specific interaction.

Were you satisfied with the support provided?

| Yes | | No |

Thank you for selling with Amazon,

Livitha P.
Amazon.com Seller Support
=====================================
MORE WAYS TO GET HELP:
Visit our Seller Forums for help from other sellers: http://sellercentral.amazon.com/forums
Browse all Seller Help topics: http://sellercentral.amazon.com/gp/help

Please note: this e-mail was sent from a notification-only address that cannot accept incoming e-mail. Please do not reply to this message.

To contact us again about this issue, please use the Contact Us form using the following link:
https://sellercentral.amazon.com/gp/contact-us/contact-amazon-form.html?ie=UTF8&
caseID=16930497391


----------
From: **Amazon Seller Support** <merch.service05@amazon.com>
Date: Mon, Dec 30, 2024 at 11:11 AM
To: <universalindustrieswyoming@gmail.com>



Hello from Amazon Selling Partner Support,

My name is Nors. I am a Live Channel Specialist, and I'm contacting you to follow up on your concern about the brand update update that has been changed form Cool Chimpanzee to JNAB for ASIN B0B1GFY6VB and from Cool Chimpanzee to Garifon for ASIN B0B8185TY8 and you would like to report the possible hijacking.

The brand name have been changed due to the brand being flagged as "abusive" by Amazon.

If you stil believe that this listings was hijacked. We encouraged you to report this possible violation to our investigations team, select Report a violation of our rules on the Contact Us form (at the link below) and enter the details:

https://sellercentral.amazon.com/cu/contact-us

Please be sure to include the following information, as applicable:

* The ASIN/ISBN of the item's detail page and the product title
* The store or business name of the seller you are reporting
* Your order ID [include this if appropriate]
* A concise explanation of the violation
Alternatively, if you are the registered brand owner in Brand Registry, you can use Report a Violation from your brand registry account using the link below.

https://brandregistry.amazon.com/brand/report-a-violation

All reports are thoroughly investigated by our investigations team. For privacy reasons, the results of our investigations cannot be disclosed.

To help us continually improve, we ask that you take a moment to complete our survey below to tell us about your experience with this specific interaction.

Were you satisfied with the support provided?

| Yes | No |
|-----|-----|

Thank you for selling with Amazon,
Nors H.
Live Channel Specialist
=======================================
For additional help, visit http://sellercentral.amazon.ca/gp/help

To contact us again about this issue, please use the Contact Us form in Seller Central using the following link:

https://sellercentral.amazon.com/cu/case-dashboard/view-case?caseID=16930497391

Please note: this e-mail was sent from a notification-only address that cannot accept incoming e-mail. Please do not reply to this message.

----------
From: **Amazon Seller Support** <merch.service05@amazon.com>
Date: Mon, Dec 30, 2024 at 12:43 PM
To: <universalindustrieswyoming@gmail.com>

Hello from Amazon Selling Partner Support,

Thank you for contacting us. This is Francisco and I'm glad to help.

We understand you are reporting that brand names have changed suddenly to an incorrect brand name.

To report this possible violation to our investigations team, select Report a violation of our rules on the Contact Us form (at the link below) and enter the details:

https://sellercentral.amazon.com/cu/contact-us

Please be sure to include the following information, as applicable:

* The ASIN/ISBN of the item's detail page and the product title
* The store or business name of the seller you are reporting
* Your order ID [include this if appropriate]
* A concise explanation of the violation
Alternatively, if you are the registered brand owner in Brand Registry, you can use Report a Violation from your brand registry account using the link below.

https://brandregistry.amazon.com/brand/report-a-violation

All reports are thoroughly investigated by our investigations team. For privacy reasons, the results of our investigations cannot be disclosed.

Thank you for contacting Amazon Selling Partner Support.

To help us continually improve, we ask that you take a moment to complete our survey below to tell us about your experience with this specific interaction.

Were you satisfied with the support provided?

**Yes**     **No**

Best regards,

Francisco Javier G.
Amazon Brand Registry Support

To contact us again about this issue, please access your case using the link shown below (Brand Registry account login required):
https://brandregistry.amazon.com/gp/case-dashboard/view-case.html?caseID=16930497391

Please note: this e-mail was sent from a notification-only address that cannot accept incoming e-mail. Please do not reply to this message.

----------
From: **Amazon Seller Support** <merch.service05@amazon.com>
Date: Mon, Dec 30, 2024 at 8:55 PM
To: <universalindustrieswyoming@gmail.com>

Hello from Amazon Brand Registry Support,

This is Jobvishal and I am here to assist you with your concern regarding updating the Brand name for the ASINs: B0B1GFY6VB and B0B8185TY8

Upon checking, I would like to let you know that we are unable to proceed with your request as changing brand name doesn't comply with our Amazon Brand Name Policy. We don't allow changes to the brand name on existing ASINs.

Changing the brand name on an existing ASIN can lead to customer confusion. If you want to rebrand your product, we recommend creating a new ASIN for rebranded products.

Minor corrections, such as typos, capitalization, or addressing legal abbreviations, are permitted. Any changes beyond such minor corrections are considered rebranding.

For more information, go to "Amazon Brand Name Policy":

https://sellercentral.amazon.com/help/hub/reference/G2N3GKE5SGSHWYRZ

Please note that we have checked everything that we should to verify the information regarding the change in Brand. I see the title with the suggested Brand name. However we are unable to go ahead as the Brand "Cool Chimpanzee" is not active and is in abusive state.

Also please be noted that Amazon does not encourage hijacking

If you believe that this listings was hijacked. I suggest you to report this violation to our investigations

team. Select Report a violation of our rules on the Contact Us form link below and enter the details:

https://sellercentral.amazon.com/cu/contact-us

Please be sure to include the following information, as applicable:

-> The ASIN/ISBN of the item's detail page and the product title

-> The store or business name of the seller you are reporting

-> Your order ID [include this if appropriate]

-> A concise explanation of the violation

You can use Report a Violation from your brand registry account using the link below if you are the registered brand owner in Brand Registry:

https://brandregistry.amazon.com/brand/report-a-violation

Please note that all reports are thoroughly investigated by our investigations team. For privacy reasons, the results of our investigations cannot be disclosed.

To help us continually improve, we ask that you take a moment to complete our survey below to tell us about your experience with this specific interaction.

Were you satisfied with the support provided?



Best regards,

Jobvishal M.
Amazon Brand Registry Support

To contact us again about this issue, please access your case using the link shown below (Brand Registry account login required):
https://brandregistry.amazon.com/gp/case-dashboard/view-case.html?caseID=16930497391

Please note: this e-mail was sent from a notification-only address that cannot accept incoming e-mail. Please do not reply to this message.

2/26/25, 1:42 PM Gmail - DOCUMENT MATTER filed 05/06/25 PROP ... 

Case 2:25-cv-00860-JHC Document 1 Filed 05/06/25 Page 36 of 55

Thank you for submitting your appeal.  This email address does not accept incoming messages.

Please submit your appeal by following the instructions on the Account Health page in Seller Central (https://sellercentral.amazon.com/performance/dashboard?ref=ah_em_nr). The Account Health page shows how well your account is performing against the performance metrics and policies required to sell on Amazon, and helps us direct your appeal to the team that can best assist you.

To appeal a listing deactivation, please click on the 'Next Steps' link next to the listing on your Account Health page.

To appeal an account deactivation, please follow the instructions in the banner on the top of your Account Health page.

You should expect a reply within 1-2 days after your appeal is submitted.

Thank you,
Amazon

[Quoted text hidden]



Jennifer Lexington <universalindustrieswyoming@gmail.com>

---

## RE:[CASE 17229508291] Brand Registry request for PrimeMed
4 messages

---

**brandregistryapplication05@amazon.com** <brandregistryapplication05@amazon.com>     Mon, Feb 17, 2025 at 4:03 PM
To: universalindustrieswyoming@gmail.com

Hello from Amazon Selling Partner Support,

Thank you for your interest in Amazon Brand Registry.

We'll update you about your brand application after the Brand Registry team completes the review.
To review your submitted application(s), please visit https://brandregistry.amazon.
com/brand/enrollment/manage/applications

We appreciate your patience.

To help us continually improve, we ask that you take a moment to complete our survey below to tell us about your experience with this specific interaction.

Were you satisfied with the support provided?



Best regards,

Rolando Augusto S.
Amazon Brand Registry Support

To contact us again about this issue, please access your case using the link shown below (Brand Registry account login required):
https://brandregistry.amazon.com/gp/case-dashboard/view-case.html?caseID=17229508291

Please note: this e-mail was sent from a notification-only address that cannot accept incoming e-mail. Please do not reply to this message.

---

**brandregistryapplication05@amazon.com** <brandregistryapplication05@amazon.com>     Tue, Feb 18, 2025 at 1:07 AM
To: universalindustrieswyoming@gmail.com

Hello from Amazon Brand Registry Support,

My name is Sneha. I understand that you would like to register the brand PrimeMed.

We've provided a verification code to the public contact listed on the agency website where the trademark for PrimeMed is registered.

To receive the verification code, contact the trademark correspondent. Please do not, under any circumstance, contact the trademark office directly.

The verification code will confirm you are eligible to enroll PrimeMed in Brand Registry.

Trademark correspondent email address: contactus@thejacobslaw.com

Reply to this case within 10 days with the verification code and case ID for this application.

The case ID for your application is 17229508291.

If the email for the trademark representative is a PEC, or certified email, they should unlock their email to receive non-PEC emails.

We're not able to provide you with instructions on how to unlock a PEC email. They should contact their email provider for instructions.

If you did not apply for Brand Registry, contact us immediately on the following page:

https://brandregistry.amazon.com/cu/contact-us

To help us continually improve, we ask that you take a moment to complete our survey below to tell us about your experience with this specific interaction.

Were you satisfied with the support provided?

| Yes | No |
| --- | --- |

Best regards,

Sneha G.
Amazon Brand Registry Support

To contact us again about this issue, please access your case using the link shown below (Brand Registry account login required):
https://brandregistry.amazon.com/gp/case-dashboard/view-case.html?caseID=17229508291

Please note: this e-mail was sent from a notification-only address that cannot accept incoming e-mail. Please do not reply to this message.

---

**brandregistryapplication05@amazon.com** <brandregistryapplication05@amazon.com>                Tue, Feb 18, 2025 at 10:31 PM
Reply-To: "[CASE 17229508291] brand-registry-support@amazon.com" <brandregistryapplication05+e15bfa64-0f33-425e-a700-6b120e434d8b@amazon.com>
To: universalindustrieswyoming@gmail.com

Hello from Amazon Brand Registry Support,

My name is Sneha. I understand that you would like to register the brand PrimeMed.

I would like to inform you that I have reviewed the case and we have contacted the specialized department on your behalf; we await a response from them.

We will contact you as soon as we have an update or if any further information is required from your side.
[Quoted text hidden]

---

**brandregistryapplication05@amazon.com** <brandregistryapplication05@amazon.com>                Wed, Feb 19, 2025 at 6:13 AM
To: universalindustrieswyoming@gmail.com

Hello from Amazon Brand Registry Support,

My name is Sneha. I understand that you would like to register the brand PrimeMed.

We are unable to approve your request at this time for the following reason: the to-be-added trademark has been involved in abusive conduct on our websites or is related to an account that was used for such abusive conduct.

Case 2:25-cv-00860-JHC — Document 91 — Filed 05/06/25 — Page 39 of 55

Please reach out to us via Brand Registry ➜ Support ➜ Help Center (Contact Brand Support) for support or queries related to the application.

To help us continually improve, we ask that you take a moment to complete our survey below to tell us about your experience with this specific interaction.

Were you satisfied with the support provided?

**Yes**  **No**

Best regards,

Sneha G.
Amazon Brand Registry Support

To contact us again about this issue, please access your case using the link shown below (Brand Registry account login required):
https://brandregistry.amazon.com/gp/case-dashboard/view-case.html?caseID=17229508291

Please note: this e-mail was sent from a notification-only address that cannot accept incoming e-mail. Please do not reply to this message.



**Done**          **Photo**          

 britneyspears ✔       **EXHIBIT E**          ⋯



                        



**mileycyrus** ✓ • Follow

Load more comments

**samanthaleeburns** i want

**godrulzart** Love, like, follow, comment, appreciate, tag, feel the greatness of love..🎨🖼️✓✓☐☐🌸🌸 Get a nice cartoon portrait of yourself in HD quality 🖼️🎨🎨✓✓

**stassy_veronica** cutie

**sherlynacosta1246** Your so beautiful 🙏🙏🙏💎

**kevinus7gb** Your rabbit is very pretty 🐰

**katieclemens** Can I be that stuffed bunny wow

**meganchavana** @theragdoll these remind me of @thepinkpalace_ pics!

**mis20something** @ericonfuego

**nathastyles** YOU ARE JUST FLAWLESS LIKE HOWWWW

♡

**163,202 likes**

38 MINUTES AGO

Add a comment...



  **kangaroomfg** ⌄



**View Insights**                                    **Promote**

                      

Liked by **nyclaurenbeth**, **learningexpressbuckhead** and **11 others**

**kangaroomfg** Wow! Look at what we found in the #GQ magazine!! The Rock with our butterfly float on his back! 😍 🦋 #gqstyle #gqmagazine #gqmag

    



# EXHIBIT F – MASTER INDEX

### Exhibit F: Cowboy Hat SKU Case Study

*Systemic Fee Inflation via Mismeasurement*

### Supporting Complaint Paragraphs 27–30

This exhibit provides evidence of Amazon's deliberate mismeasurement fraud affecting Plaintiff's cowboy hat product line, resulting in arbitrarily inflated FBA fees, net losses on formerly profitable SKUs, and documented internal refusal to remedy the error.

---

### Index of Attached Exhibits

---

### Exhibit F1 – Cover Sheet and Summary Table

Overview of the fee inflation issue across six cowboy hat SKUs, showing variations in FBA fees ranging from $6.39 to $14.77 for identically packaged products. Includes summary profitability impact and verified weight comparisons.

---

### Exhibit F2 – Screenshot of SKU T5137 (Gray Hat) with $14.77 FBA Fee

T5137 was assigned a $14.77 FBA fee — more than double the fee of functionally identical SKUs. No dimensional, packaging, or material differences justify the increase.

---

### Exhibit F3 – Brown Hat Scale Photo (SKU T5134)

Verified ULINE scale image showing the Brown hat weighs only 0.216 lbs — far below Amazon's listed weight and well within the lowest fulfillment tier.

---

### Exhibit F4 – Tan Hat Scale Photo (SKU T5136)

Tan hat measured at 0.228 lbs. Packaging and structure are identical to the Brown hat. Reinforces the physical uniformity of the product line.

**Exhibit F5 – Seller Central Screenshot Showing SKU Fee Spread**

Live Seller Central dashboard view showing inconsistent fulfillment fees applied to multiple cowboy hat SKUs with identical physical characteristics.

**Exhibit F6 – CASE ID 12094905301 (Amazon Internal Response)**

Amazon admits measurement data was changed but refuses remeasurement or fee reimbursement. Response illustrates Amazon's internal obstruction and bad-faith refusal to correct system errors.

**Exhibit F7 – Cubiscan vs. In-House Measurement Comparison Table**

Side-by-side listing of Amazon's recorded Cubiscan dimensions and Plaintiff's internally verified measurements. Every SKU was 5.75 inches in height, while Amazon recorded heights as high as 9.45 inches — directly resulting in fee tier inflation.

# EXHIBIT F1

### Cowboy Hat SKU Case Study: Systemic Fee Inflation via Mismeasurement

*Supporting Paragraphs 27–30*

Plaintiff presents the following evidence documenting Amazon's deliberate inflation of fulfillment fees by assigning falsified dimensions and weights to identical SKUs. Despite uniform packaging and verified in-house measurements, Amazon charged materially different fulfillment fees across listings for the same cowboy hat product, rendering formerly profitable SKUs instantly unprofitable.

The discrepancies were verified through internal weighing and measuring by Plaintiff's operations team and confirmed in communications with Amazon (CASE ID # 12094905301). These events consumed the time and labor of Plaintiff's CTO, Operations Manager, and Shipping Manager, demonstrating the scale and severity of the obstruction and loss.

### Fee Discrepancy Summary Table

| SKU | Hat Color | FBA Fee | Sale Price | Actual Weight (Scale) | Claimed Height (Amazon Cubiscan) | Fee Tier Impact |
|-----|-----------|---------|------------|-----------------------|----------------------------------|-----------------|
| T5134 | Blue | $9.41 | $14.95 | 0.216 lbs | 7.01 in | Modest profit |
| T5136 | Green | $9.57 | $14.95 | 0.228 lbs | 6.22 in | Modest profit |
| T5137 | Gray | $14.77 | $14.95 | 0.228 lbs | 9.45 in | Net loss |
| T5138 | Pink | $8.93 | $14.95 | 0.228 lbs | 5.47 in | Acceptable margin |
| T5139 | Orange | $6.39 | $14.95 | 0.216 lbs | 6.22 in | High margin |
| T5140 | Yellow | $8.61 | $14.95 | 0.216 lbs | 5.63 in | Modest profit |

*Note: All hats were measured and packaged identically. Amazon's Cubiscan measurements varied arbitrarily, causing severe fee inflation on specific SKUs.*

# EXHIBIT F2

| Status | SKU | Product | Date | Qty | Price details | Offer |
|---|---|---|---|---|---|---|
| Active | G-COWBOY-T5134-BLUE-BLUE-BAND-MFG-VG<br>New | Green Sky Sturdy, Felt Cowboy Hat for Men, Women and Teens, Western Hat (Blue)<br>B0BNFD58H9<br>+1 marketplaces | 02/13/2023 15:59:47<br>02/13/2023 16:22:00 | 56 | $11.65 Includes $9.41 FBA Fee | 14.95 + $0.00<br>Featured Offer: $14.95 + $0.00<br>✓ Lowest price<br>View more ›<br>+ $0.00 · Add quantity discounts ›<br>Edit |
| Active | G-COWBOY-T5136-GREEN-BLAK-BAND-MFG-VG<br>New | Green Sky Sturdy, Felt Cowboy Hat for Men, Women and Teens, Western Hat (Green)<br>B0BNFFTQ3L<br>+1 marketplaces | 02/13/2023 15:58:51<br>02/13/2023 16:22:04 | 446 | $11.81 Includes $9.57 FBA Fee | 14.95 + $0.00<br>Featured Offer: $14.95 + $0.00<br>✓ Lowest price<br>View more ›<br>+ $0.00 · Add quantity discounts ›<br>Edit |
| Active | G-COWBOY-T5137-GRAY-BLAK-BAND-MFG-VG<br>New | Green Sky Sturdy, Felt Cowboy Hat for Men, Women and Teens, Western Hat (Gray)<br>B0BNFFS2JT<br>+1 marketplaces | 02/13/2023 15:57:37<br>02/13/2023 16:21:58 | 23 | $17.01 Includes $14.77 FBA Fee | 19.95 + $0.00<br>Featured Offer: $14.95 + $0.00<br>✓ Lowest price<br>View more ›<br>Your change is being processed. It may take up to 15 minutes to take effect.<br>+ $0.00 · Add quantity discounts ›<br>Edit |
| Active | G-COWBOY-T5138-PINK-BLAK-BAND-MFG-VG<br>New | Green Sky Sturdy, Felt Cowboy Hat for Men, Women and Teens, Western Hat (Hot Pink)<br>B0BNFD2B68<br>+1 marketplaces | 02/13/2023 15:56:45<br>02/13/2023 16:22:00 | 59 | $11.17 Includes $8.93 FBA Fee | 14.95 + $0.00<br>Featured Offer: $14.95 + $0.00<br>✓ Lowest price<br>View more ›<br>+ $0.00 · Add quantity discounts ›<br>Edit |
| Active | G-COWBOY-T5139-ORANGE-BLAK-BAND-MFG-VG<br>New | Green Sky Sturdy, Felt Cowboy Hat for Men, Women and Teens, Western Hat (Orange)<br>B0BNFCZ3GL<br>+1 marketplaces | 02/13/2023 15:55:18<br>02/13/2023 16:22:03 | 0 | $8.63 Includes $6.39 FBA Fee | 14.95 + $0.00<br>Featured Offer: $14.95 + $0.00<br>✓ Lowest price<br>View more ›<br>+ $0.00 · Add quantity discounts ›<br>Edit |
| Active | G-COWBOY-T5140-YELL-BLAK-BAND-MFG-VG<br>New | Green Sky Sturdy, Felt Cowboy Hat for Men, Women and Teens, Western Hat (Yellow)<br>B0BNFFW2KQ<br>+1 marketplaces | 02/13/2023 15:55:48<br>02/13/2023 16:21:59 | 46 | $10.85 Includes $8.61 FBA Fee | 14.95 + $0.00<br>Featured Offer: $14.95 + $0.00<br>✓ Lowest price<br>+ $0.00 · Add quantity discounts ›<br>Edit |

EXHIBIT F5



 **EXHIBIT F6**

Central Concepts Support <billing@jasminesgifts.com>

---

## Fwd: [CASE 12094905301] FBA Fee Discrepancies
1 message

**Jeff Jordanna** <jeff@gsp.llc>                                                      Sat, Mar 4, 2023 at 2:52 AM
To: Benjamin Joseph <ceo@gsp.llc>

---

---------- Forwarded message ---------
From: **Amazon Seller Support** <merch.service05@amazon.com>
Date: Sat, Mar 4, 2023, 2:33 AM
Subject: RE:[CASE 12094905301] FBA Fee Discrepancies
To: <jeff@gsp.llc>


Hello from Amazon Selling Partner Support,

Thank you for reaching out to us. My name is Mohd and it will be a pleasure to assist you today.

We understand that you are concerned about incorrect weights, dimensions or fees related to your inventory.

We realize the impact of this issue on your business and agree that this is important to be solved.

We appreciate your patience in waiting for the response from us.

We have completed our investigation and below are our findings:

We have confirmed the measurements for FNSKU(s) B0BJ6693X5, B0BJ6BQ48S, B0BKNC5RPV, X003OXGVRH, as noted below.

A change in the weight or dimensions has resulted in a reimbursement of FBA fees to your account. You will receive the following reimbursement in the next few days: Adjustment Amount/ Unit 26.88/ USD2.24/ USD65.4/ USD69.12/ USD

The new measurements for FNSKU(s) are:

B0BJ6693X5:

* Length: 15.24 INCHES

* Width: 11.85 INCHES

* Height: 7.28 INCHES

* Weight: 0.24 POUNDSB0BJ6BQ48S:

* Length: 16.69 INCHES

* Width: 12.32 INCHES

* Height: 5.63 INCHES

* Weight: 0.24 POUNDSB0BKNC5RPV:

* Length: 16.61 INCHES

* Width: 12.95 INCHES

* Height: 6.77 INCHES

* Weight: 0.33 POUNDSX003OXGVRH:

* Length: 15.16 INCHES

* Width: 12.4 INCHES

* Height: 5.83 INCHES

* Weight: 0.26 POUNDS

To confirm reimbursement, go to Payments, click the "Transaction View" report, and filter the view by "Other" criteria". Under the column "Transaction type" look for "Fee Adjustment." You will see a single line item for every Order ID that has been reimbursed.

There will be a positive number in the column titled "Amazon fees" indicating the reimbursement amount for that specific order.

Payments Page: https://sellercentral.amazon.com/payments/event/view?resultsPerPage=10&pageNumber=1

For more information on different product size tiers and associated fees, refer to:

Product Size Tiers : https://sellercentral.amazon.com/help/hub/reference/GG5KW835AHDJCH8W

FBA Fulfilment Fees : https://sellercentral.amazon.com/gp/help/help-page.html?itemID=200209150&referral=A1XLHC23EGJ8J9_A2ICL6ZMYHJ45B

For more information on our reimbursement policy, go to: https://sellercentral.amazon.com/help/hub/reference/GGL7U4JFSDXUTQAJ

To learn more about how to avoid discrepancies with Amazon measurements, see: https://sellercentral.amazon.com/help/hub/reference/G6WAEPTECPT2JUH3

We have confirmed the measurements for FNSKU(s) B0BNFFS2JT, X003DO3LJ3, B0BJ6DKWMH, B0BNFD2B68, B0BJ6MZGB3, B0BNFFW2KQ, B0BJ6LY6S6, B0BNFD58H9, B0BNFFTQ3L, B0BJ6BFS32, B0BJ5S6CFS, as noted below.

B0BNFFS2JT :

* Length: 15 INCHES

* Width: 12.28 INCHES

* Height: 9.45 INCHES

* Weight: 0.26 POUNDS X003DO3LJ3 :

* Length: 16.69 INCHES

* Width: 12.56 INCHES

* Height: 7.44 INCHES

* Weight: 0.26 POUNDS B0BJ6DKWMH :

* Length: 14.13 INCHES

* Width: 12.68 INCHES

* Height: 5.79 INCHES

* Weight: 0.4 POUNDS B0BNFD2B68 :

* Length: 15.79 INCHES

* Width: 13.15 INCHES

* Height: 5.47 INCHES

* Weight: 0.29 POUNDS B0BJ6MZGB3 :

* Length: 14.88 INCHES

* Width: 13.35 INCHES

* Height: 4.49 INCHES

* Weight: 0.49 POUNDS B0BNFFW2KQ :

* Length: 14.61 INCHES

* Width: 12.01 INCHES

* Height: 5.63 INCHES

* Weight: 0.24 POUNDS B0BJ6LY6S6 :

* Length: 15.07 INCHES

* Width: 14.8 INCHES

* Height: 4.53 INCHES

* Weight: 0.44 POUNDS B0BNFD58H9 :

* Length: 14.72 INCHES

* Width: 13.19 INCHES

* Height: 7.01 INCHES

* Weight: 0.26 POUNDS B0BNFFTQ3L :

* Length: 17.01 INCHES

* Width: 13.7 INCHES

* Height: 6.22 INCHES

* Weight: 0.29 POUNDS B0BJ6BFS32 :

* Length: 15.47 INCHES

* Width: 13.07 INCHES

* Height: 7.09 INCHES

* Weight: 0.26 POUNDS B0BJ5S6CFS :

* Length: 17.2 INCHES

* Width: 13.66 INCHES

* Height: 5.55 INCHES

* Weight: 0.26 POUNDS

We have reviewed your reimbursement request and found that the change in the weight or dimensions for FNSKU(s) B0BNFFS2JT, X003DO3LJ3, B0BJ6DKWMH, B0BNFD2B68, B0BJ6MZGB3, B0BNFFW2KQ, B0BJ6LY6S6, B0BNFD58H9, B0BNFFTQ3L, B0BJ6BFS32, B0BJ5S6CFS, have not resulted in any reimbursement of FBA fees to your account.

For more information on different product size tiers and associated fees, refer to:
https://sellercentral.amazon.com/gp/help/GABBX6GZPA8MSZGW?referral=A1XLHC23EGJ8J9_A2ICL6ZMYHJ45B

To learn more about how to avoid discrepancies with Amazon measurements, see:
https://sellercentral.amazon.com/gp/help/G6WAEPTECPT2JUH3?referral=A1XLHC23EGJ8J9_A2ICL6ZMYHJ45B

We received your request to change the weight or dimensions of FNSKU(s) B0BJ5NK8L8 , B0BJ63PDP5 , X003OXV59V , .

We are unable to re-measure these item(s) at the moment as there is no measurable inventory available in our fulfillment centers.

This can happen when inventory is located in third party fulfillment center, is being held for a customer order, or is being transshipped to another fulfillment center.

Send in additional inventory for re-measurement or submit a new measurement request after 10 days.

If you have any further concerns that you would like address, we request you to raise a new case with your issue or use the contact us link on
Seller Central- https://sellercentral.amazon.com/help/hub/support

We appreciate your cooperation and understanding in this matter.

To help us continually improve, we ask that you take a moment to complete our survey below to tell us about your experience with this specific interaction.

Were you satisfied with the support provided?

| Very dissatisfied | Dissatisfied | Neutral | Satisfied | Very satisfied |
|---|---|---|---|---|

Thank you!

To view your case details, or respond, please click http://sellercentral.amazon.com/gp/case-dashboard/view-case.html/ref=sc_cd_lobby_vc?caseID=12094905301

Please note: this e-mail was sent from an address that cannot accept incoming e-mail. If you require additional support please contact us https://sellercentral.amazon.com/hz/contact-us

Thank you for selling with Amazon,

Mohd M.
Amazon.com Seller Support
=====================================
MORE WAYS TO GET HELP:
Visit our Seller Forums for help from other sellers: http://sellercentral.amazon.com/forums
Browse all Seller Help topics: http://sellercentral.amazon.com/gp/help

Please note: this e-mail was sent from a notification-only address that cannot accept incoming e-mail. Please do not reply to this message.

To contact us again about this issue, please use the Contact Us form using the following link:
https://sellercentral.amazon.com/gp/contact-us/contact-amazon-form.html?ie=UTF8&caseID=12094905301

EXHIBIT F7

| A | B | C | D |
|---|---|---|---|
| **ASIN** | **Product Name** | **Amazon Cubiscan Measurements** | **IN-HOUSE MEASUREMENT** |
| B0BNFD58H9 | Cowboy Hat - Blue | Length: 14.72 INCHES  Width: 13.19 INCHES  Height 7.01 INCHES  Weight: 0.26 POUNDS | Length: 15.25Width: 12.25Height: 5.75 |
| B0BNFFTQ3L | Cowboy Hat - Green | Length: 17.01 INCHES  Width: 13.7 INCHES  Height: 6.22 INCHES  Weight: 0.29 POUNDS | Length: 15.25Width: 12.25Height: 5.75 |
| B0BNFFS2JT | Cowboy Hat - Gray/Black Band | Length: 15 INCHES  Width: 12.28 INCHES  Height: 9.45 INCHES  Weight: 0.26 POUNDS | Length: 15.25Width: 12.25Height: 5.75 |
| B0BNFD2B68 | Cowboy Hat - Pink/Black Band | Length: 15.79 INCHES  Width: 13.15 INCHES  Height: 5.47 INCHES  Weight: 0.29 POUNDS | Length: 15.25Width: 12.25Height: 5.75 |
| B0BNFCZ9GL | Cowboy Hat - Orange/Black Band | * Length: 15.67 inches * Width: 13.19 inches * Height: 6.22 inches * Weight: 0.24 pounds | Length: 15.25Width: 12.25Height: 5.75 |
| B0BNFFW2KQ | Cowboy Hat - Yellow/Black Band | Length: 14.61 INCHES  Width: 12.01 INCHES  Height: 5.63 INCHES  Weight: 0.24 POUNDS | Length: 15.25Width: 12.25Height: 5.75 |
| B0BKNC5RPV | Cowboy Hat - White/Pink Star Band | Length: 16.61 INCHES  Width: 12.95 INCHES  Height: 6.77 INCHES  Weight: 0.33 POUNDS | Length: 15.25Width: 12.25Height: 5.75 |
| B0BJ6BFS32 | Cowboy Hat - Red/White Band | Length: 15.47 INCHES  Width: 13.07 INCHES  Height: 7.09 INCHES  Weight: 0.26 POUNDS | Length: 15.25Width: 12.25Height: 5.75 |
| B0BJ6BQ48S | Cowboy Hat - Cowprint | Length: 16.69 INCHES  Width: 12.32 INCHES  Height: 5.63 INCHES  Weight: 0.24 POUNDS | Length: 15.25Width: 12.25Height: 5.75 |
| B0BJ67ZTGT | Cowboy Hat - Coffee/Brown Band | Length: 9 inches * Width: 9 inches * Height: 5 inches * Weight: 0.12 pounds | Length: 15.25Width: 12.25Height: 5.75 |
| B0BJS56CFS | Cowboy Hat - White/Black Band | Length: 17.2 INCHES  Width: 13.66 INCHES  Height: 5.55 INCHES  Weight: 0.26 POUNDS | Length: 15.25Width: 12.25Height: 5.75 |
| B0BJ6B93X5 | Cowboy Hat - Black/White Band | Length: 15.24 INCHES  Width: 11.85 INCHES  Height: 7.28 INCHESWeight: 0.24 POUNDS | Length: 15.25Width: 12.25Height: 5.75Weight: 228 |
| B0BT16THCG | Cowboy Hat - Tan | Length: 15.71 inches * Width: 12.24 inches * Height: 6.22 inches * Weight: 0.29 pounds | Length: 15.25Width: 12.25Height: 5.75 |
| B0B11C8DYY | Cowboy Hat - Brown | Length: 15.71 INCHES  Width: 12.87 inches * Height: 5.35 inches * Weight: 0.29 pounds | Length: 15.25Width: 12.25Height: 5.75 |
| B0B151PCS | Cowboy Hat - Pink | Length: 15.16 INCHES  Width: 12.4 INCHES  Height: 5.83 INCHES  Weight: 0.26 POUNDS | Length: 15.25Width: 12.25Height: 5.75 |
| B0B11BPANY | Cowboy Hat - Black | Length: 16.69 INCHES  Width: 13.66 INCHES  Height: 7.44 INCHES  Weight: 0.26 POUNDS | Length: 15.25Width: 12.25Height: 5.75 |
| B0BJG3PDP5 | Panama Hat - Cream | Length: 15.98 inches * Width: 13.62 inches * Height: 4.45 inches * Weight: 0.42 pounds |  |
| B0BJ5NK8L8 | Panama Hat - Beige Classic | Length: 15.98 inches * Width: 13.62 inches * Height: 4.45 inches * Weight: 0.42 pounds |  |
| B0BJ6DKWMH | Panama Hat - Black | Length: 14.13 INCHES  Width: 12.68 INCHES  Height: 5.79 INCHES  Weight: 0.4 POUNDS |  |
| B0BJ6LY6S6 | Panama Hat - Khaki Brown | Length: 15.07 INCHES  Width: 14.8 INCHES  Height: 4.53 INCHES  Weight: 0.44 POUNDS |  |
| B0BJ6MZGB3 | Panama Hat - White | Length: 14.88 INCHES  Width: 13.35 INCHES  Height: 4.49 INCHES  Weight: 0.49 POUNDS |  |
| B010CGDF0I | Crumbcatcher Bibs | Length: 18.27 inches *Width: 7.24 inches *Height: 2.44 inches Weight: 1.79 pounds |  |